UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| EVELYN LYNN BLEVINS, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | No. 1:21-cv-00142-SKL |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| *Defendant*. | ) | |

**<u>MEMORANDUM AND ORDER</u>**

Plaintiff Evelyn Lynn Blevins ("Plaintiff") brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her supplemental security income ("SSI"). Each party has moved for judgment [Doc. 12 & Doc. 19] and filed supporting briefs [Doc. 13 & Doc. 20]. For the reasons stated below: (1) Plaintiff's motion for summary judgment [Doc. 12] will be **DENIED**; (2) the Commissioner's motion for summary judgment [Doc. 19] will be **GRANTED**; and (3) the decision of the Commissioner will be **AFFIRMED**.

I.      ADMINISTRATIVE PROCEEDINGS

According to the administrative record [Doc. 7 ("Tr.")], Plaintiff filed her application for SSI on August 28, 2018, alleging disability beginning February 28, 2017. Plaintiff's claims were denied initially and on reconsideration at the agency level. Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was held telephonically on July 14, 2020. On August 14, 2020, the ALJ found Plaintiff was not under a disability as defined in the Social Security Act

at any time from the date the Plaintiff's application was filed[1] through the date of the ALJ's decision.

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Plaintiff timely filed the instant action.

## II. FACTUAL BACKGROUND

### A. Education and Employment Background

Plaintiff was born September 23, 1975, making her 42 years old on the date her application was filed, which is considered a "younger individual." 20 C.F.R. § 416.963. She has a limited education and is able to communicate in English. She has past relevant work as a shipping and receiving clerk and as a heavy equipment operator (Tr. 27).

### B. Medical Records

In her October 2018 Disability Report, Plaintiff alleged disability due to a stroke in February 2018, severe anxiety, panic attacks, high blood pressure, "back problems," and an enlarged thyroid (Tr. 208). While there is no need to summarize all of the medical records herein, the relevant records have been reviewed.

### C. Hearing Testimony

At the telephonic hearing before the ALJ on July 14, 2020, Plaintiff and a vocational expert ("VE") testified. Plaintiff was represented by counsel at the hearing. The Court has carefully reviewed the transcript of the hearing (Tr. 35-52).

---

[1] SSI applicants, such as Plaintiff, are not entitled to benefits until "the month following the month" that the application is filed, regardless of the date of alleged disability onset. 20 C.F.R. § 416.335.

## III. ELIGIBILITY AND THE ALJ'S FINDINGS

### A. Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)). The Social Security Administration ("SSA") determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

3

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citations omitted). The claimant bears the burden to show the extent of their impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010) (citations omitted).

### B. The ALJ's Findings

At step one of the five-step process, the ALJ found Plaintiff had not engaged in substantial gainful activity since her application date, August 28, 2018. At step two, the ALJ found Plaintiff had the following severe impairments: (1) degenerative disc disease, (2) residuals of a cerebrovascular accident ("CVA"), (3) carpal tunnel syndrome, and (4) anxiety. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 19).

Next, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b), with the following additional restrictions:

- She can stand and/or walk only up to four hours in an eight-hour workday.

- She can only occasionally push and/or pull with her right lower extremity.

- She can only occasionally perform all other postural activities, but she can never climb ladders, ropes, or scaffolds.

- She cannot work around hazards or drive as a job duty.

- She can only occasionally perform fine manipulation, but she can frequently perform gross manipulation with the bilateral upper extremities.

- She should have no concentrated exposure to extreme temperatures or vibrations.

- She can perform simple, routine tasks not at a production rate pace.

- She can only tolerate infrequent changes in routine and work setting.

(Tr. 22). At step four, the ALJ found Plaintiff was not capable of performing her past relevant work of a shipping and receiving clerk, or a heavy equipment operator. Both are performed at the medium exertional level (Tr. 27). At step five, however, the ALJ found there were other occupations with jobs existing in substantial numbers in the national economy available to a person with Plaintiff's RFC, including bakery worker and routing clerk (Tr. 28-29).

These findings led to the ALJ's determination that Plaintiff was not under a disability as defined in the Social Security Act at any time between the date Plaintiff submitted her application and the date of the decision (Tr. 29).

## IV. ANALYSIS

Plaintiff argues the ALJ's decision should be reversed and remanded for further administrative proceedings. She argues the "physical RFC determination is not supported by substantial evidence because the ALJ failed to properly evaluate the opinion of Plaintiff's primary care physician, Dr. Martha Ziegler, M.D." [Doc. 13 at Page ID # 1013].

### A. Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citations omitted). The United States Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek*

5

*v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also McClanahan*, 474 F.3d at 833. Furthermore, the evidence must be "substantial" in light of the record as a whole, "taking into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).

If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) (citations omitted); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971) (citation omitted). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No.

6

1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

    **B.**    **The ALJ's Assessment of Dr. Ziegler's Opinion**

To assess a claimant's RFC, ALJs are required to consider all of the relevant evidence in a claimant's record, including the medical opinion evidence. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013). Plaintiff filed her application on August 28, 2018. Accordingly, as both parties acknowledge, the applicable regulation is 20 C.F.R. § 416.920c.[2]

Subsection (a) of 20 C.F.R.§ 416.920c provides:

> (a) How we consider medical opinions and prior administrative medical findings. We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources. When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. The most important factors we consider when we evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section). We will articulate how we considered the medical opinions and prior administrative medical findings in your claim according to paragraph (b) of this section.

The regulations explain that, regarding supportability, the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or

---

[2] Applications filed prior to March 27, 2017, were subject to the so-called "treating physician rule," which requires ALJs to "generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians." *Blakley v. Comm'r of Soc. Sec.*, 581 F. 3d 399, 406 (6th Cir. 2009). ALJs are no longer required to give special deference to treating physicians, as is reflected in the regulation quoted above.

her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 920c(c)(1). Regarding consistency, the "more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 920c(c)(2).

In addition to supportability and consistency, the ALJ is required to consider the source's relationship with the claimant, including the length, frequency, purpose, and extent of the treating relationship, if any; the source's specialization, and other factors, such as the source's familiarity with other evidence in the record and whether the source understands the SSA's policies and evidentiary requirements. *Id.* § 920c(c). The ALJ is required to explain how they considered supportability and consistency, but not the remaining factors. *Id.* § 920c(b)(2).

If a source offers multiple opinions, the ALJ is not required to articulate their assessment of every single medical opinion; rather, they can articulate how they considered all of that source's opinions "in a single analysis." *Id.* § 920c(b)(1).

According to Plaintiff, Dr. Ziegler was her "primary care physician from February 15, 2019, through at least April 2020." [Doc. 13 at Page ID # 1022]. Dr. Ziegler provided an opinion on November 7, 2019, on a check-mark style form (Tr. 855-57).

Regarding Dr. Ziegler's opinion, the ALJ wrote:

> Martha Ziegler, M.D., one of the claimant's physicians, opined the claimant would need to recline for two one-hour sessions per day, and she could only sit, stand, or walk for thirty minutes at a time (Ex. B16F). Dr. Ziegler also opined the claimant would require a thirty-minute break every hour (Ex. B16F). This opinion was not persuasive as it was not consistent with a majority of the objective medical evidence. During a consultative examination, the claimant

8

> was able to walk heel to toe without assistance, and she was in no acute distress (Ex. B15F/4). The opinion appeared to be based entirely on the claimant's subjective report, so it had limited internal support (Ex. B16F). It was noted that this opinion was based on "patient reports" and not on objective evidence (Ex. B16F/3).

(Tr. 27).

Regarding the supportability factor in 20 C.F.R. § 416.920c, Plaintiff argues Dr. Ziegler's opinion is supported by her own treatment notes:

> At her initial visit, Dr. Ziegler noted that Plaintiff suffered from decreased concentration, depressed mood, excessive worry, irritability, muscle tension, nervous/anxious behavior, panic and restlessness. T 744. Dr. Ziegler noted that the Plaintiff had movement of arms and legs throughout the exam. T 745. She diagnosed her with anxiety and extrapyramidal and movement disorder. T 745. On March 1, 2019, Dr. Ziegler noted that Plaintiff had uncontrolled movement of the legs. T 747. On March 29, 2019, Dr. Ziegler noted that Plaintiff had tremors that affect her legs, arms, hands and feet. T 748. The onset was sudden and they were severe, occurring all day. T 748. She noted that there were "large movements suddenly of arms and legs." T 749. On February 12, 2020, Dr. Ziegler noted abnormal movement of arms and legs, and "unable to relax[,"] which occurred after a stroke. T 929. She noted that Plaintiff was taking diazepam and gabapentin, which provided moderate relief. T 929. On April 15, 2020, Dr. Ziegler again noted "she has movement of the legs and arms that is sporadic and sudden." T 922. In addition to sporadic movements, Dr. Ziegler treated Plaintiff for anxiety, hoarse voice and hypertension. T 817, 918. On multiple visits she noted that Plaintiff was agitated with decreased concentration, with dysphoric mood and sleep disturbance. T 744, 748, 819, 829.

[Doc. 13 at Page ID # 1022-23].

Regarding the consistency factor in 20 C.F.R. § 416.920c, Plaintiff argues her medical record contains "significant evidence consistent with Dr. Ziegler's opinion throughout the medical record," stating:

> Plaintiff had a stroke in February 2017, for which she was treated at the hospital. T 330. Soon after, Plaintiff saw her primary care

9

doctor for a follow up appointment after being released from the hospital. T 386. On March 8, Nurse Noble noted she had numbness on the right side of the face, slight closure of right eye, numbness in right hand, and blurry vision in her right eye. T 386. On April 12, 2017, she returned due to frequent nose bleeds, trembling in her right hand and was unsteady on her feet. T 376-378. On August 9, 2017, she saw her neurologist, Dr. Han, who noted that she had lasting issues with pain prominent in her whole body, with leg pain and leg swelling. T 458. He questioned whether she had fibromyalgia. T 458.

Plaintiff was taking medication for her mental health issues through Mountain behavioral health. T 486-734. Over the course of her health check-ins, it was noted, in February 2018, that her shakiness had returned and she was complaining of being unable to hold a cup of coffee. T 673.

On April 24, 2019, Plaintiff was admitted to the hospital for numbness of her face, unsteady gait and right arm weakness. T 755. Dr. Yap noted that she started experiencing a headache two days prior to admission, then started with right sided weakness, mainly in the face and right arm. T 755. Plaintiff also indicated that she was losing coordination and was afraid she was going to fall. T 755. Her mother noticed that she was slurring her speech a little and acting a little bit confused. T 755. Dr. Yap noted that her upper right extremity was slightly weaker at 4/5 and that she had a mild facial droop. T 756. She was given tests and a neurology consult. T 759. Neurology thought this could be a transient ischemic attack secondary to high blood pressure. T 759. This probative evidence is highly consistent with Dr. Ziegler's opinion. The ALJ in this case failed to properly consider the factor of consistency when evaluating Dr. Z[iegler's] opinion. This is error.

[Doc. 13 at Page ID # 1023-24].

Plaintiff contends the ALJ's error is not harmless because Dr. Ziegler assessed limitations that would disqualify Plaintiff from performing even sedentary work, including the inability to sit more than four hours per day, the need to lie down for one hour twice per eight-hour workday, and the need to take additional unscheduled rest breaks every hour for 30 minutes [Doc. 13 at Page ID # 1024-25; *see also* Tr. 855-56]. Dr. Ziegler assessed these limitations in a completed "Medical

Source Statement (Physical)" form dated November 7, 2019, which was a checkbox and fill-in-the-blank form provided to Dr. Ziegler by Plaintiff's counsel for completion in connection with Plaintiff's application for Social Security benefits [Tr. 855-57].[3]

Regarding supportability, Plaintiff does not address that Dr. Ziegler expressly checked on the form that her November 2019 opinion was "not based on objective evidence"; instead, she filled in the blank on the form to explain her opinion was based on "patient reports." (Tr. 857). As such, the ALJ's finding that the November 2019 opinion was based on Plaintiff's subjective reports is supported by substantial evidence. Moreover, on the first page of the checkbox form, when asked to describe any "[d]iagnostic, laboratory, clinical, or other findings" that support her opined limitations, Dr. Ziegler did not list any findings—she left the form blank (Tr. 855). It was reasonable for the ALJ to discount Dr. Ziegler's opinion on this basis. *See Gladson v. Saul*, No. 6:20-064-DCR, 2020 WL 6689196, at *7 (E.D. Ky. Nov. 12, 2020) (holding that the ALJ properly discounted medical opinion where the doctor "relied too heavily on Gladson's subjective complaints when preparing his opinion").

Moreover, the ALJ found that Plaintiff's "statements regarding the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 23). Plaintiff does not directly challenge this finding by the ALJ or address it in her brief, and the Court has determined this finding is supported by substantial evidence. That is, the Court finds the ALJ properly evaluated Plaintiff's reported symptoms and complaints symptoms in a manner consisted with

---

[3] The Sixth Circuit has held that a checkmark opinion, unaccompanied by any explanation, is "'weak evidence at best' and meets our patently deficient standard." *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 475 (6th Cir. 2016) (citation omitted).

relevant SSA policies and regulations, including Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304 (SSA Oct. 25, 2017). Such evaluations are properly entrusted to the ALJ. *See Rottman v. Comm'r of Soc. Sec.*, 817 F. App'x 192, 194 (6th Cir. 2020) ("Given the deferential substantial-evidence standard, '[c]laimants challenging the ALJ's credibility findings face an uphill battle.'" (quoting *Nettleman v. Comm'r of Soc. Sec.*, 725 F. App'x 358, 360 (6th Cir. 2018))).

Furthermore, as the Commissioner notes, the ALJ did discuss Dr. Ziegler's treatment notes in the decision, indicating the ALJ did consider them when evaluating Dr. Ziegler's opinion and the supportability factor (Tr. 24, 25). *See Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474 (6th Cir. 2016) (endorsing examination of ALJ's entire decision when reviewing ALJ's assessment of opinion evidence). The ALJ specifically mentioned that Plaintiff's "extremities were positive for sporadic and sudden movement" (Tr. 25). The ALJ also noted that Plaintiff reported in March 2019 that she had a prior CVA which resulted in a "movement disorder and anxiety." (Tr. 24). The ALJ discussed how, in July 2019, during a visit with Dr. Ziegler, Plaintiff's "range of motion and coordination were described as normal," she had "no cranial nerve deficit," and "her mood, affect, behavior, judgment, and thought content were all described as normal" (Tr. 24). Plaintiff does not cite to any treatment records reflecting any functional assessments by Dr. Ziegler other than her checkmark form opinion, nor does she cite to any explanation of how the treatment records, the pre-November 2019 records in particular, support the fairly extreme walking, standing, sitting, and resting limitations opined to by Dr. Ziegler in that form.

Elsewhere in the decision, the ALJ discussed findings and notations in Plaintiff's medical record that further undermine the supportability of Dr. Ziegler's opinion, and which reflect that the ALJ performed the requisite consistency analysis. For example, the ALJ noted the following findings from a November 2019 consultative exam performed by Julana Monti, M.D.:

12

> It was noted the claimant had no seizures, but she claimed incoordination, weakness, and loss of sensation (Ex. B15F/2). . . . The claimant was in no acute distress, and it was noted she used a cane to ambulate (Ex. B15F/2). . . . Phalen's signs were positive bilaterally, and straight leg raising was positive on the right (Ex. B15F/3). The claimant had some decreased sensation in the right lower extremity, but she had no abnormal reflexes (Ex. B15F/3). The claimant's alternating movements were intact without fatigue, and her dexterity and strength were intact (Ex. B15F/3). The claimant was able to bend at the waist and squat, and her gait was described as antalgic and stable (Exhibit B15F/3). The claimant was able to walk heel to toe without assistance (Exhibit B15F/4).

(Tr. 24).

The ALJ also noted that Dr. Thomas Thrush and Dr. Sue Slaughterbeck (both State agency consultants), and Dr. Stephen Goewey (a consultative examiner) all opined Plaintiff could stand or walk for at least up to four hours in an eight-hour workday (Tr. 26). The ALJ also cited other notes and findings in Plaintiff's treatment record inconsistent with Dr. Ziegler's opinion, such as an April 2019 MRI of the cervical spine showed only mild diffuse disc bulges with no central spinal stenosis or neural foramina narrowing (Tr. 26, 780), Dr. Goewey's February 2019 exam notes reflect a normal ability to balance and squat and an unremarkable gait (Tr. 26, 742), post-operative notes from March 2020 show that Plaintiff had a carpal tunnel release surgery "with good results" (Tr. 27, 863), and Dr. Monti's November 2019 exam notes reflect Plaintiff had 5/5 grip strength in both hands with intact dexterity (Tr. 849).

Plaintiff contends that records from her April 2019 hospitalization are "highly consistent with Dr. Ziegler's opinion." [Doc. 13 at Page ID # 1024]. However, contrary to Plaintiff's suggestion, the ALJ discussed this event in detail, noting:

> In April of 2019, the claimant was admitted for three days, and she was assessed with right-sided weakness and history of old cerebrovascular accident that had improved (Ex. B13F). The claimant was also assessed with hypertension, panic attacks, and

13

>anxiety with agoraphobia (Ex. B13F). A CT scan showed normal findings and a left maxillary mucous retention cyst, and an MRI showed no evidence of acute infarction (Ex. B13F). An MRA of the head and neck had normal findings, but showed congenital variance of the aberrant right subclavian artery and Bovine arch dominant left vertebral artery (Ex. B13F). An echocardiogram demonstrated a left ventricle ejection fraction of 60 percent and normal diastolic function (Ex. B13F). An MRI of the cervical spine revealed mild diffuse disc bulges at C3, C4, C5, and C6 with no central canal stenosis or neural foraminal narrowing (Ex. B13F).

(Tr. 24).

The ALJ then went on to discuss later records reflecting that during exams, Plaintiff's coordination was normal, she had no cranial nerve deficit, she had normal grip strength, she was able to walk without assistance, and she had no motor or sensory deficits. Much of this evidence has already been discussed above. Moreover, the ALJ is "not required to discuss all of the relevant evidence in the record," so long as they consider the evidence as a whole "and reach a reasoned conclusion." *Ricci v. Berryhill*, No. 3:16-CV-651-HBG, 2017 WL 5985801, at *5 (E.D. Tenn. Dec. 1, 2017) (quoting *Dycus v. Astrue*, No. 3:12-CV-78, 2012 WL 4215829, at *7 (E.D. Tenn. Aug. 30, 2012), *adopted*, 2012 WL 4172138 (E.D. Tenn. Sept. 18, 2012)); *Boseley v. Comm'r of Soc. Sec.*, 397 F. App'x 195, 199 (6th Cir. 2010)). In this case, Plaintiff has failed to show ALJ mischaracterized the relevant treatment notes, overlooked or ignored contrary lines of evidence, or otherwise "cherry-picked select portions of the record." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 723-24 (6th Cir. 2014) (finding error where the ALJ failed to address "portions of the record, including the evidence of a continuing illness that was not resolved despite use of increasingly serious and dangerous medications").

Plaintiff also cites *White v. Commissioner of Social Security*, No. 1:20-CV-00588-JDG, 2021 WL 858662 (N.D. Ohio Mar. 8, 2021). *White* is undoubtedly distinguishable. In that case,

14

the ALJ relied in part on a vocational evaluation to reject the opinions of two treating physicians regarding the limitations caused by White's headaches. In so relying, however, the ALJ failed to note that the vocational evaluation itself stated White reported to the evaluation with a migraine and tried to work through it, but had to take "frequent breaks (both during and between assessments) for extended periods of time." *Id.* at *20. The vocational evaluation also noted White required additional appointments to complete the evaluation "due to these breaks and limitations in stamina." *Id.* In reversing the ALJ's decision, the district court observed (among other problems) that the ALJ "fail[ed] to discuss this portion of [the vocational evaluation] or explain how it is inconsistent" with the treating physicians' opinions that White would need significant unscheduled breaks. *Id.* Plaintiff points to no similar deficiency in the ALJ's evaluation of Dr. Ziegler's opinion or her claim in general.

The ALJ's decision in this case demonstrates that the ALJ considered the factors of supportability and consistency in evaluating Dr. Ziegler's opinion in the context of the record as a whole, and ultimately reached a reasoned conclusion regarding Plaintiff's RFC. The ALJ's articulation is sufficient to allow the Court to review the ALJ's evaluation of these factors and to determine that the ALJ's evaluation is supported by substantial evidence. Contrary to Plaintiff's position, the decision reflects a "logical bridge between the evidence and the conclusion that the claimant is not disabled." [Doc. 13 at Page ID # 1021 (quoting *Gilliam v. Astrue*, No. 2:10-CV-017, 2010 WL 2837260, at *3 (E.D. Tenn. July 19, 2010))]. Unlike in *Gilliam*, in this case, it is possible "to determine what evidence the ALJ credited and what evidence [s]he rejected." 2010 WL 2837260, at *2 (citation omitted).

In sum, because the ALJ had "the enormous task of making sense of the record, reconciling conflicting medical opinions and evidence, and weighing the credibility of [Plaintiff's] subjective

15

complaints," this Court's review is limited to whether the ALJ relied on evidence that "a reasonable mind might accept as adequate to support a conclusion." *Johnson v. Comm'r of Soc. Sec.*, No. 21-1384, 2022 WL 740692, at *2 (6th Cir. Jan. 4, 2022) (quoting *Biestek*, 139 S. Ct. at 1154). In assessing Plaintiff's RFC, the ALJ explained the evidence that supported her conclusion and why she considered certain evidence less persuasive, and the Court finds the ALJ's findings and conclusions are adequately supported.

Finally, as the Commissioner mentions in her brief, Plaintiff does not make any developed argument concerning her mental limitations, and so these are not addressed in any detail herein. The Court notes, however, that the ALJ's assessment of Plaintiff's mental limitations is likewise adequately supported; and, the basis for the ALJ's limitation to simple, routine tasks not at a production rate pace, with infrequent changes in routine and work setting is also adequately articulated in the decision.

## V. CONCLUSION

For the foregoing reasons, it is **ORDERED** that:

(1) Plaintiff's motion for summary judgment [Doc. 12] is **DENIED**;

(2) the Commissioner's motion for summary judgment [Doc. 19] is **GRANTED**; and

(3) the Commissioner's decision denying benefits is **AFFIRMED**.

SO ORDERED.

ENTER:

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE